UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISMAIL IBN SMITH,

                     Plaintiff,

           -against-

ERIC ADAMS; MOLLY WASOW PARK; LAWRENCE ROSENBLATT; JOHN DOE #1; JOHN DOE #2; JOHN DOE #3; JOHN DOE #4; JOHN DOE #5,

                     Defendants.

24-CV-8879 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LOUIS L. STANTON, United States District Judge:

    Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983. He alleges that Defendants violated his constitutional rights during his stay in residential facilities operated by the non-profit Bowery Residents Committee (BRC). Plaintiff sues New York City Mayor Eric Adams; New York City Department of Homeless Services (DHS) Commissioner Molly Wasow Park and DHS representative Jane Doe[1] (collectively "the New York City defendants"). He also sues BRC President Lawrence Rosenblatt; Director John Doe #1 and Supervisor John Doe #2, from BRC's Lexington Street facility; and Director John Doe #3, and Security Guard John Doe #5, from BRC's Vue facility in Queens (collectively "the BRC defendants").

    By order dated February 21, 2025, Plaintiff was granted leave to proceed *in forma pauperis*, that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action, with 30 days' leave to replead.

---

[1] Although Plaintiff refers to the DHS representative as John Doe #4, he also refers to this defendant as "she," and the Court therefore refers to this defendant as Jane Doe.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court

must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the complaint.[2] In February 2023, Plaintiff arrived at the BRC's supportive housing facility on Lexington Street in Manhattan. (ECF 1 at 10.) During his stay, Plaintiff had difficulties with his assigned roommates. BRC Supervisor John Doe #2 first assigned a client who had mental illness to share Plaintiff's room, and the two had "an altercation." (*Id.*) Plaintiff's next roommate kept his insulin in their shared refrigerator, and BRC Facility Director John Doe #1 would not allow Plaintiff to purchase a separate refrigerator. Plaintiff had another roommate who responded with threats when Plaintiff asked him close the bathroom door; staff escorted this roommate to the lobby, where the roommate "was coerced into writing a fabricated report in an attempt to have [Plaintiff] sent to prison." (*Id.*) The BRC Director and Supervisor (John Does #1 and #2) then reassigned this roommate to a room next door to Plaintiff's room, despite his having made threats against Plaintiff. (*Id.*)

Another client who was assigned to room with Plaintiff "tried to fight" with him and then complained to staff about Plaintiff. Director John Doe #1 told Plaintiff to pack his belongings, as he was being transferred to a different BRC location.

Plaintiff filed a complaint against John Doe #1, which led to a meeting with DHS representative Jane Doe. Plaintiff alleges that, during their conversation, Jane Doe told him that: (1) she would stop his transfer to Queens; (2) that DHS has its own Section 8 list for housing;

---

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

(3) that she would place him in DHS's apprenticeship program; and (4) she would "tell BRC to allow [him] to do maintenance." (*Id.* at 11.) However, Jane Doe "never followed up." (*Id.*)

On the day of Plaintiff's transfer, another BRC client "approached [Plaintiff] to fight while defendant John Doe #1 hid in the corner and observed . . . ." (*Id.*)

Upon Plaintiff's arrival at BRC's "Vue" facility in Queens County, the facility director, John Doe #3, warned Plaintiff that staff was "on notice" that Plaintiff was at risk of being "terminated from the shelter system." (*Id.* at 12.) After Plaintiff had resided at BRC's Vue facility for about a month, Security Guard John Doe #5 informed Plaintiff, when he was attempting to enter the facility one day, that he did not see Plaintiff's name on the list and did not recognize him. Plaintiff "responded," and John Doe #5 then had Plaintiff "falsely removed by police." (*Id.*)

A BRC outreach team eventually had Plaintiff reinstated to the BRC Vue facility. At some point thereafter, however, the BRC Vue Director called Plaintiff to his office and told him that, because he had made "sexual comments to the housing specialist," his stay at the BRC facility was terminated.

Plaintiff states that, during his time at BRC, he made "endless complaints" to the BRC "owners and operators" and complained to Mayor Eric Adams. (*Id.* at 12.) Plaintiff contends that, because of the "chaos and confusion" at BRC, he lost his Social Security card and birth certificate, and his bicycle was stolen.

Plaintiff invokes the Court's federal question jurisdiction and asserts claims, under Section 1983, for alleged violations of his rights under the First, Eighth, Tenth, and Fourteenth Amendments. (*Id.* at 2.) He seeks damages. (*Id.* at 6.)

4

# DISCUSSION

**A.    Constitutional claims against BRC employees**

Plaintiff invokes Section 1983, asserting claims for violations of his constitutional rights. To state a Section 1983 claim, a plaintiff must allege that a person acting under the color of state law, or a "state actor," violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Thus, a claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Plaintiff asserts federal constitutional claims against BRC President Rosenblatt, the Directors and a Supervisor of BRC facilities in Manhattan and Queens (John Does #1-3), and a security guard alleged to work for BRC (John Doe #5). Because these defendants are employed by BRC, a private non-profit organization, and are not alleged to be state actors, Plaintiff has not stated a claim against these defendants under Section 1983.[3] The Court therefore dismisses Plaintiff's Section 1983 claims against the BRC defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[3] Although a private security guard who exercises police powers can be a state actor, such as where a security guard is deputized as a "special patrolman" under the New York City Administrative Code, *Rojas v. Alexander's Dep't Store, Inc.*, 654 F. Supp. 856, 858 (E.D.N.Y. 1986) (relying on *Williams v. United States*, 341 U.S. 97, 99 (1951)), the sole allegation here is that the BRC security guard called the police in response to a conflict.

**B.      Claims against New York City Defendants**

       1.      Mayor Eric Adams and DHS Commissioner Park

To state an individual capacity claim, under Section 1983, a plaintiff must allege facts showing the defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

      In the caption of the complaint, Plaintiff names as defendants DHS Commissioner Park and New York City Mayor Eric Adams. Plaintiff does not mention DHS Commissioner Park, however, in the body of the complaint. He also does not plead facts sufficient to suggest that Mayor Adams was personally involved in the events underlying his claims. Plaintiff's allegations that he sent a complaint to Mayor Adams about his experiences with BRC, which is not an agency of the City of New York, are insufficient to establish that Mayor Adams was personally involved in violating Plaintiff's rights. *See*, *e.g.*, *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior*

6

liability." (italics, quotation marks, and citation omitted)). Plaintiff thus does not state individual-capacity claims against Defendants Park and Adams.

The complaint could also be liberally construed as asserting claims against Commissioner Park and Mayor Adams in their official capacities. "A claim against a municipal employee in his or her official capacity may be treated as an action against the municipality itself." *Nassau County Emp. "L" v. County of Nassau*, 345 F. Supp. 2d 293, 298 (E.D.N.Y. 2004) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Plaintiff's official-capacity claims thus can be treated as claims against the City of New York.

When a plaintiff sues a municipality such as the City of New York under Section 1983, however, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997).

Plaintiff fails to allege any facts that suggest that a policy, custom, or practice of the City of New York caused a violation of his constitutional rights. Insofar as the complaint might be understood as alleging that the New York City DHS violated his rights in connection with his referral to BRC, he fails to state a claim under the Due Process Clause.[4] "The two threshold

---

[4] Plaintiff also invokes the Eighth Amendment to the U.S. Constitution, which applies to convicted prisoners, and the Tenth Amendment, which governs the powers reserved to the States; the allegations of the complaint do not implicate either of these constitutional amendments.

7

questions in any Section 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

Plaintiff does not have a property interest in placement in a particular type of shelter. *See Lindsey v. Normet*, 405 U.S. 56, 74 (1972) ("We are unable to perceive in [the Constitution] any constitutional guarantee of access to dwellings of a particular quality. . ."); *Jenkins v. New York City Dept. of Homeless Services*, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009) ("The Plaintiff has no claim for deprivation of property without due process because he does not have a property right to placement in a particular type of shelter under New York law."). Plaintiff's allegations about his transfer to BRC Queens thus do not state Section 1983 claims against Defendants Adams and Park in their official capacities for violations of his constitutional rights. It is also not clear that Plaintiff makes any other official-capacity claim against these Defendants. The Court therefore dismisses Plaintiff's claims against Mayor Eric Adams and Commissioner Park for failure to state a claim on which relief can be granted. *See* § 1915(e)(2)(B)(ii).

   2.   DHS representative Jane Doe

Plaintiff sues DHS representative Jane Doe, apparently for her alleged failure to intervene to stop his transfer to BRC Queens and to "place him in" an apprenticeship program. Plaintiff's allegations that Jane Doe's unauthorized actions deprived him of these benefits fail to state a procedural due process claim, as he has alleged neither a property interest nor a lack of available process. To have a property interest in a benefit, a person must have "more than an abstract need or desire," or "unilateral expectation" of a benefit and must instead "have a legitimate claim of entitlement to it." *Town of Castle Rock, CO v. Gonzales*, 545 U.S. 748, 756 (2005) (citing *Board*

8

*of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). "A benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* at 756. As previously stated, Plaintiff did not have an entitlement to be housed at a particular BRC facility. *Jenkins*, 643 F. Supp. 2d at 512.

Plaintiff's vague allegations are also insufficient to suggest that he had a claim of entitlement to admission to an apprenticeship program. Even if Plaintiff were entitled to admission to some such program, where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate post-deprivation remedy); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (same).

A proceeding in a New York State court under Article 78 of the New York Civil Practice Law and Rules is generally considered an adequate post-deprivation remedy for an improper agency decision. *See Horton v. Westling*, 765 F. App'x 531, 533 (2d Cir. 2019) (summary order) ("This Court has often acknowledged that Article 78 proceedings provide an adequate state remedy for procedurally improper agency decisions.") (citations omitted). Plaintiff's allegations — that he discussed with Jane Doe certain benefits, to which he does not allege that he had a claim of entitlement, and that she failed to "follow up"— are insufficient to state a claim that his rights under the Due Process Clause were violated. The Court therefore dismisses, for failure to state a claim on which relief may be granted, Plaintiff's claims against Defendant Jane Doe. *See* § 1915(e)(2)(B)(ii).

### C.   State-Law Claims

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it is unclear if Plaintiff may be able to allege additional facts to state a valid claim, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

### CONCLUSION

Plaintiff's federal claims are dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

      The Clerk of Court is directed to hold this matter open on the docket until judgment is entered.

      SO ORDERED.

Dated:   May 13, 2025
          New York, New York

                                                                *Louis L. Stanton*
                                                                 Louis L. Stanton
                                                                      U.S.D.J.